AUGUST 14, 1801.

# Robert Jones *et al.*, heirs of Gabriel Jones, *v.* Taylor and Lee.

*Upon an appeal from the decree of the General Court.*

A survey purporting to be made on a military warrant, which never came to the hands of the surveyor to whom it was directed, is illegal and void.

The surveyor of a county being a ministerial officer, and a land warrant his special authority for making a survey, it seems clearly deducible, both from law and reason, that the authority should be deposited in the hands of the person who is required to act under it, and that, until such deposit is made; he may justly refuse, and can not be compelled to act at all.

In this cause, it is not pretended that the warrant under which the appellants claim was ever lodged in the office of Col. William Preston, the surveyor of Fincastle county, or that the said warrant ever came into his hands until the month of October, 1782.

The testimony of John Bell and William Ballard seems to raise a presumption that the warrant was in the possession of Hancock Taylor, Preston's deputy, at the time he made the survey; but the presumption arising from this testimony, if it was altogether unexceptionable, is so strongly rebutted by circumstances which appear in the cause, that nothing short of positive proof can be admitted to establish the fact. No such proof being produced, it must necessarily follow that the survey made for Slaughter and Jones by Hancock Taylor, in June, 1774, was unauthorized, and totally destitute of any legal foundation, not only because the warrant which the appellants claim under was never lodged in the surveyor's office of Fincastle county, but because the warrant, had it been lodged in the office, being in the name of Gabriel Jones only, could not have authorized a survey in the name of Slaughter and Jones. The survey, therefore, can be considered in no other light than a private one, which it is in proof, Hancock Taylor and many other surveyors were at that time in the habit of making. Indeed, there is strong evidence to believe that Col. Preston, from his not

having returned the survey to the clerk of the county, nor inserted it among the copies which he transmitted to the commissioners who sat in Kentucky, considered it in that light himself.

The next question, then, to be considered is, whether a survey purporting to be made on a military warrant, which never came to the hands of the surveyor to whom it was directed, comes within the description of those surveys which are confirmed by the act of the Virginia assembly, passed at the May session, 1779, entitled "An act for adjusting and settling the titles of claimers to unpatented lands under the present and former government, previous to the establishment of the commonwealth's land office." In this law it is enacted, "That all surveys of waste and unappropriated land made upon any of the western waters, before the first of January, 1778, upon any warrant from the governor for the time being, for military service, in virtue of any proclamation, either from the king of Great Britain or any former governor of Virginia, shall be and are hereby declared good and valid; but that all surveys of waste and unpatented lands made by any other person, or upon any other pretense whatever, shall be and are hereby declared null and void." This law recognizes no surveys on the western waters, for military service, as good and valid, but such as were made on warrants before the first of January, 1778, and the survey now under consideration not being of that description, must of course fall within the description of those which are declared null and void. Being void, the land covered by it must, of consequence, have become vacant, and as such, liable to be appropriated by any person having a land warrant. No fraud, then, can be imputed to Edmund Taylor, in whose name the entry was made on the land in contest, nor to Hancock Lee, who gave him information of the vacancy; because Lee states in his answer, and his statement is uncontradicted by any testimony in the cause, that the warrant which he is charged with the fraudulent concealment of, was never committed to his care or management; that he had no knowledge of its being in his possession until the fall of 1779; that after he discovered the warrant among his papers, he acknowledged the possession of it to every person who made inquiry after it, and, on application, delivered it, in the beginning of the year 1781, either to Hankinson Reed or George Slaughter, who applied for it on behalf of the representatives of G. Jones; that the first information he received of the survey was from Hempenstall, in the year 1780, who represented it as a survey made for Slaughter

and Jones, in 1774, by Hancock Taylor, but as the compensation for the risk, trouble, &c., necessary for making the survey had not been paid, and as Hankinson Reed, one of Slaughter's executors, had pointedly refused payment thereof, and being well informed that Slaughter and Jones had not lodged a warrant in the principal surveyor's office, to authorize the survey, he (Hempenstall) thought they had no just right to it, and at the same time proposed that as he had no warrant of his own to locate on the land included in the survey, he was willing to make a location thereon for the said Lee; that he, the said Hancock Lee, being without warrants, communicated the proposal to Edmund Taylor, who agreed to furnish warrants and divide the land which should be procured by the location between him and the said Lee; that Hempenstall thereupon made out a location, conformable to which, as the said Lee believes, the entry was afterward made in the name of Edmund Taylor.

For the reasons herein before given, and because in the whole of this transaction there is not the least appearance of fraud either on the part of Hancock Lee or Edmund Taylor, and as nothing but the most unequivocal proof of it in one or the other, or in both, could warrant the interposition of a court of chancery to divest the representatives of Edmund Taylor of their legal title, it is the opinion of this court, that the decree of the general court be affirmed, and that the appellees recover of the appellants their costs in this behalf expended, which is ordered to be certified to the said court.